**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
IN THE MATTER OF THE CLAIM OF THE
ESTATE OF WILLIE JACKSON BY HIS
ADMINISTRATIX SHANTA JACKSON,

Plaintiff,

- against -

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, POLICE
COMMISSIONER RICHARD DORMER, in his
individual and official capacity, POLICE
OFFICER RONALD BRUER, in his individual
and official capacity, POLICE OFFICER EUGENE
CIPRIANO, in his individual and official capacity,
JOHN MOORE, in his individual and official
capacity, KYLE SIMCOX, in his individual and
official capacity, JAMES O'HAGAN, in his individual
and official capacity, CHRISTOPHER DONOVAN,
in his individual and official capacity, COUNTY
OF SUFFOLK OFFICE OF DISTRICT
ATTORNEY, SUFFOLK COUNTY DISTRICT
ATTORNEY THOMAS SPOTA, in his individual
and official capacity, ASSISTANT DISTRICT
ATTORNEY, ROBERT BIANCA VILLA, in his
Individual and official capacity,

Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**

12-1455 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.      PRELIMINARY STATEMENT

This civil rights action brought by the Estate of decedent Willie Jackson ("Plaintiff" or

the "Estate") stems from an April 2, 2011 incident between Jackson and officers from the

Defendant Suffolk County Police Department ("SCPD") outside the Peacemakers Motorcycle Club in Wyandanch, New York. That incident ultimately led to Jackson's death.

On March 20, 2012, counsel for the Estate filed the original Complaint, naming Suffolk County, certain officials of Suffolk County and a number of "John and Jane Does" as Defendants. *See* DE 1. The list of Defendants was revised on February 7, 2013 when Plaintiff filed an Amended Complaint against Defendants County of Suffolk, SCPD, Police Commissioner Richard Dormer ("Commissioner Dormer"), Police Officer Ronald Breuer, Police Officer Eugene Cipriano, John Moore, Kyle Simcox, James O'Hagan, Christopher Donovan, the Office of the Suffolk County District Attorney, Suffolk County District Attorney Thomas Spota ("D.A. Spota"), and Assistant District Attorney Robert Bianca Villa (*sic*) ("ADA Biancavilla") (collectively, the "County Defendants"). Plaintiff has brought claims for: false arrest and use of excessive force under 42 U.S.C. § 1983; municipal liability under § 1983; conspiracy to deprive Plaintiff of his civil rights under § 1985; failure to intervene under § 1986; abuse of process under §§ 1983 and 1985; race discrimination under § 1981; wrongful death; negligence; and battery. *See* Amended Complaint ("Am. Compl.") ¶ 1 [DE 27].

Before the Court is Plaintiff's motion for sanctions, pursuant to FED. R. CIV. P. 37, against the County Defendants for their alleged spoliation of evidence. *See* Estate of Willie Jackson by His Administratrix, Shanta Jackson Amended Memorandum in Support of Plaintiff's Motion for Spoliation Sanctions ("Pl.'s Mot.") [DE 54]. Specifically, Plaintiff requests that the County Defendants be sanctioned by this Court for failing to preserve the batons and flashlights which were in the possession of SCPD Officers Ronald Breuer and Eugene Cipriano during the April 2, 2011 incident. Plaintiff's counsel posits that one of these officers struck the decedent

with a baton, leading to his head injury and ultimate death on that date. Plaintiff's argument rests principally on the statement of the decedent's widow, Ms. Laura Jackson, that her late husband was hit with a "stick" by one of the SCPD officers. SCPD Detective Ronald Bottari initially transferred the two officers' batons and flashlights to the SCPD Property Section to preserve them as evidence from the crime scene. A little over a year later, on May 24, 2012, Detective Bottari released these items to Officers Breuer and Cipriano upon their request and without notice to Plaintiff's counsel. Counsel for the Estate maintains that the batons and flashlights were the "key pieces of evidence to allow Plaintiff the chance to support their case" and have "been destroyed" due to the County Defendants' actions. As a result, Plaintiff's counsel requests that the Court (1) strike the pleadings of the "captioned defendants," (2) enter a default judgment, (3) award Plaintiff costs and attorney's fees, and (4) provide any further relief the Court may deem appropriate.

In their opposition, the County Defendants assert that Plaintiff's motion is meritless, as a preliminary matter, since "no such spoliation has occurred." The County Defendants maintain that Plaintiff's characterization of Detective Bottari's release of the batons and flashlights to Officers Breuer and Cipriano as spoliation is inaccurate. Moreover, the County Defendants' attorney argues that not a "scintilla of evidence" has been provided by Plaintiff that these items contained any relevant evidence. Given the absence of spoliation, the County Defendants contend that sanctions are not warranted. Assuming the Court entertains Plaintiff's argument that Detective Bottari's release of these items constituted "spoliation" of evidence, the County Defendants argue that Plaintiff, nevertheless, fails to establish (1) any duty to preserve, (2) a culpable state of mind by the Defendant police personnel, or (3) the relevancy of the batons and

flashlights at issue.

For the reasons which follow, Plaintiff's motion for sanctions is DENIED.

## II.    BACKGROUND

### A.    The Amended Complaint

On or about April 2, 2011 at approximately 11 p.m., Plaintiff Willie Jackson, an African-American male, was standing in front of a motorcycle club in Wyandanch, New York "acting in a lawful manner." Am. Compl. ¶ 30. Plaintiff claims, upon information and belief, that Defendants SCPD Officers Breuer and Cipriano were "responsible" for his "false arrest, false imprisonment, and unlawful seizure, beating, physical abuse, and restraint, causing him to die, without probable cause, without justification, and without lawful authority." *Id.* ¶ 31. Further, Plaintiff claims that Defendants Breuer, Cipriano, Moore, Simcox, O'Hagan and Donovan "were aware of the beating and/or torture but failed to intervene, failed to provide prompt adequate medical attention, failed to report it promptly, and failed to protect Mr. Jackson while in custody and/or detained." *Id.* ¶ 32. Defendant SCPD Officers Breuer and Cipriano, according to the Plaintiff, were "reckless, careless and negligent in their actions in beating the [Plaintiff] with flashlights, batons and, upon information and belief, other weapons; as a result of said beating." *Id.* ¶ 33. The Estate asserts that the decedent was subjected to these actions even though "at no time" did he "act in a way which required the use of force or deadly force; display any weapon; threaten to harm the police; or, attempt to cause harm to the police, yet the Defendant Police Officers hit [the decedent] multiple times" subjecting him to deadly force. *Id.* Moreover, despite being aware of the decedent's "severe injury, mental and physical distress, and danger," the County Defendants on April 2, 2011 "refused and failed to promptly inform appropriate medical

4

personnel" of the decedent's "severe injury, suffering, mental and physical distress and fatal danger." *Id.* ¶ 34.

The decedent was thereafter transported to the Good Samaritan Hospital Emergency Department for treatment. Am. Compl. ¶¶ 35-36. However, the decedent was pronounced dead at approximately 2 a.m. on April 2, 2011. *Id.* ¶¶ 35, 38.

On or about April 2, 2011, Maura DeJoseph, D.O. from the Suffolk County Office of the Medical Examiner conducted an autopsy on the decedent. Am. Compl. ¶ 39. According to Plaintiff, "the Autopsy Report illustrates the unnecessary and excessive use of physical and deadly force" upon the decedent. *Id.* ¶ 40. He "received multiple contusions (bruises) in an around his body." *Id.* Plaintiff's counsel cites the autopsy report which states that the cause of death was "ACUTE CONCUSSIVE HEAD INJURY DUE TO BLUNT IMPACT." *Id.* ¶ 42 (emphasis in original). Further, the report states that the manner of death was homicide. *Id.* ¶ 43. Plaintiff's counsel asserts that Mr. Jackson "died at the hands of the Suffolk County police." *Id.* ¶ 44.

In addition, Plaintiff states that the County Defendants made "false claims" against the decedent and failed to "properly administrate, investigate and discipline said Defendant Officers," causing the decedent and his survivors to suffer "extreme physical and emotional harm, loss of support, loss of love, affection, nurturing, guidance and direction." Am. Compl. ¶ 45. Plaintiff further alleges that although the names of the police officers involved in the April 2, 2011 incident were requested, Defendants Suffolk County, the SCPD, and the Suffolk County District Attorney's Office "unreasonably prolonged the release" of the officers' names as well as the Office of Medical Examiner report and "other evidence." *Id.* ¶ 46. This, Plaintiff claims,

was "in an effort to thwart [the] investigation and to distract and remove the Defendant Officers from public scrutiny." *Id*.

Finally, Plaintiff proffers that the County Defendants "engaged in tactics" which violated the Estate's right "to obtain a full and fair investigation" of the April 2, 2011 incident. Am. Compl. ¶ 47. According to Plaintiff's counsel, these goals were accomplished "by wrongly stalling, delaying, and or neglecting to present the matter to the Grand Jury and by hastily and improperly exonerating the Defendant Officers." *Id*.

The Plaintiff has asserted ten causes of action in the Amended Complaint. In Count I, Plaintiff charges false arrest in violation of 42 U.S.C. § 1983. Am. Compl. ¶¶ 48-52. In Count II, Plaintiff claims the County Defendants violated 42 U.S.C. § 1983 by using excessive force in dealing with the decedent. *Id.* ¶¶ 53-57. In Count III, Plaintiff alleges municipal liability under Section 1983. *Id.* ¶¶ 58-68. Count IV puts forward a claim under 42 U.S.C. § 1985 for conspiracy to deprive Plaintiff of his civil rights. *Id.* ¶¶ 69-78. Count V asserts a claim for failure to intervene under 42 U.S.C. § 1986. *Id.* ¶¶ 79-83. In Count VI, Plaintiff charges abuse of process under 42 U.S.C. §§ 1983, 1985. *Id.* ¶¶ 84-96. Count VII alleges a cause of action under 42 U.S.C. § 1981. *Id.* ¶¶ 97-106. Count VIII advances a claim of negligence under New York State common law. *Id.* ¶¶ 107-110. Count IX charges wrongful death under New York State common law. *Id.* ¶¶ 111-114. Finally, Count X contains a cause of action for battery under New York State common law. *Id.* ¶¶ 115-121.

### B. June 11, 2013 Motion Hearing

Plaintiff's motion for sanctions was first raised with the Court in a letter "Motion to Intervene" filed by counsel on June 6, 2013. DE 39. That letter motion was addressed by the

Court at a hearing on June 11, 2013. DE 41. At that hearing, "[t]he Court raised some concerns with the motion filed by plaintiff's counsel and spent time discussing those issues with both sides." *Id*. ¶ 2. The Court noted that "Plaintiff's motion seeks, among other things, sanctions for defendants' alleged spoliation of evidence." *Id*. ¶ 2. The County Defendants "confirmed that the evidence [Plaintiff's counsel] claims was "spoliated" (i.e., arresting officers' flashlights and batons) was initially taken from the officers at the time of the underlying incident and was then returned to them approximately one year later." *Id*. Upon inquiry from the Court, Plaintiff's counsel reported that she did ***not*** request to inspect this evidence from the County Defendants at the time the Complaint was filed. *Id*. (emphasis added).

Because of the gravity of the spoliation issue presented in Plaintiff's letter motion, the Court found that the letter motion, lacking "substantial case law support, was insufficient to address the issue" before the Court. DE 41 ¶ 2. As a result, the Court denied Plaintiff's letter motion [DE 39], without prejudice to renew. *Id*. The Court then granted Plaintiff permission "to make a formal motion for sanctions under the Federal Rules of Civil Procedure, with an accompanying memorandum of law setting forth the cases which support plaintiff's arguments on the motion." DE 41 ¶ 2. The parties then entered into a formal briefing schedule. *Id*.

## III.  LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir. 1999); *accord Byrnie v. Town of Cromwell*, 243 F.3d 93, 107 (2d Cir. 2001). A court may impose sanctions against a party who spoliates evidence pursuant to Rule 37(b) of the Federal Rules of Civil Procedure as well as

through the Court's inherent powers to control the judicial process and the litigation before it. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002); *West*, 167 F.3d at 779. In situations where sanctions are warranted, district courts have broad discretion in "crafting an appropriate sanction for spoliation." *West*, 167 F.3d at 779; *see Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge . . . ."); *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."). The applicable sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West*, 167 F.3d 779. Stated another way, the selected sanction should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (internal quotation marks omitted); *accord Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012).

In some instances, the spoliation of evidence "can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) ("*Zubulake V*") (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). A sanction in the form of an adverse inference instruction is, however, "an extreme sanction and should not be imposed lightly." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008); *see Zubulake v. UBS Warburg LLC*, 220

F.R.D. 212, 219 (S.D.N.Y. 2003) ("*Zubulake IV*") ("In practice, an adverse inference instruction often ends litigation - it is too difficult a hurdle for the spoliator to overcome.").

A party seeking sanctions has the burden of establishing "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp*., 306 F.3d at 107 (quoting *Byrnie*, 243 F.3d at 107-12); *accord Centrifugal Force, Inc. v. Softnet Commc'n, Inc*., 783 F. Supp. 2d 736, 741 (S.D.N.Y. 2011); *Zubulake V*, 229 F.R.D. at 430.

## IV.   ANALYSIS

### A.     Whether the Batons/Flashlights Were Spoliated by the County Defendants

Preliminarily, the Court addresses the County Defendants' argument that there was no spoliation of the batons and flashlights in the first instance. *See* County Defendants' Memorandum in Opposition to Plaintiff's Motion for Sanctions ("County Defs.' Opp.") [DE 59]. According to Plaintiff's motion, Laura Jackson, the decedent's widow, made a statement to homicide Detective Bottari on the day of the incident that "one of the [officers] hit her husband and his head was bleeding." Pl.'s Mem. at 1. Detective Bottari later "confiscated the batons and flashlights from the two officers in question, Officers Breuer and Cipriano at 9:10 a.m. on April 2, 2011." *Id*. Although there were seven other officers on the scene, no evidence was taken from any officers other than Breuer and Cipriano, according to Plaintiff's counsel. *Id*. On May 24, 2012, over one year later, "Detective Bottari released the batons and flashlights to Officers Breuer and Cipriano." *Id*. at 2. Plaintiff's counsel states, "[a]ccording to the County Attorney's

Office, no forensic testing was done on the batons and flashlights which had allegedly…been held as evidence in the…custody death investigation of Willie Jackson." *Id.* at 2. Through the "willful actions" of the County Defendants, "[a]ny chance for a proper and full evaluation of this evidence has been denied." *Id.* Plaintiff's counsel then argues that "[t]his evidence included *potential* fragments of tissue, hair, and DNA decedent Willie Jackson are now lost forever with no opportunity to be recovered." *Id.* (emphasis added).

The County Defendants contend, in opposing the motion, that the "flashlights and batons were taken simply as a precautionary measure, based upon Laura Jackson's allegation that one of the officers hit Willie Jackson with a 'stick.'" County Defs.' Opp. at 4 (citing 7/26/13 Deposition Transcript of Jeffrey Bottari ["Bottari Dep."] at 41:12-18). Defendants' counsel points out that as Detective Bottari explained, Ms. Jackson's allegation was not specific, insofar as she indicated that Mr. Jackson was hit with a "stick" and not specifically a flashlight or baton. *Id.* Moreover, during his deposition, Detective Bottari noted that Ms. Jackson did not specifically indicate whether the stick was used to hit Mr. Jackson on his head:

> Q.   Did Laura Jackson tell you that the heavier officer hit her husband in the head?
>
> A.   With the stick?
>
> Q.   With the stick.
>
> A.   She didn't - - she noticed bleeding from the head, she wasn't specific as to whether - - I asked her whether this was from the fall or the hit. So she did not say whether he was hit in the head. She did observe bleeding from the head. She just said hit. She did not specify. And we asked exactly where but she saw him being hit with a stick not - - she did not give us an exact location as to where he was hit with the stick.

Q.     And so you asked her where he was hit and she did not give you an answer?

A.     She could not recall the exact location, she just saw him being hit.

Q.     She told you she cannot recall?

A.     Right.

Q.     Did you put that in the report?

A.     No, I did not.

Q.     Why didn't you put that in the report?

A.     Because there was no specific area where she was saying. We left it vague like she was telling us. She did notice the bleeding from the head though.

Q.     Did she say that after the officer hit Willie Jackson she noticed bleeding from the head?

A.     She noticed bleeding from the head while he was on the ground.

*Id.* (citing Bottari Dep. at 33-34:9-25, 2-17). In her statement, which is annexed to Plaintiff's motion, Ms. Jackson said that "the heavier cop hit Willie with a stick and Willie was bleeding from his head." *See* Laura Jackson 4/2/11 Statement to SCPD ("Ms. Jackson Statement"), annexed as Exhibit "B" to Pl.'s Mot. [DE 54-2]. The County Defendants argue that "[t]his nuance is important, because in light of Ms. Jackson's use of the work 'stick' - - plaintiff has failed to present one witness who definitely claims any police officer hit Willie Jackson in the head with a flashlight or with a baton." County Defs.' Opp. at 4.

Moreover, the County Defendants maintain that the Office of the Medical Examiner was informed of Laura Jackson's statement by Detective Bottari. County Defs.' Opp. at 5. Notwithstanding that fact, the Medical Examiner independently concluded that the decedent's

manner of death was "Homicide (Pushed by Other and Fell Backward)." *See* County Defs.' Opp. at 5 (citing Office of Medical Examiner Autopsy Report annexed as Exhibit "A" ["Autopsy Report"] at 1 [DE 54-1]. As such, the County Defendants maintain that there was a "lack of any scientific finding consistent with [Mr. Jackson] being struck with a flashlight or a baton." *Id.*

In light of his findings, Detective Bottari concluded that the flashlights and baton were not evidence in the investigation. County Defs.' Opp. at 5. According to his testimony, Detective Bottari did a comprehensive review of the evidence before making this determination:

> Q.    So you had an opportunity to look at the batons and flashlights of Breuer and Cipriano at the time?
>
> A.    Of collection, yes.
>
> Q.    What did you observe?
>
> A.    There was nothing substantial. There was no blood observed on either baton or flashlight. No hair. But they were collected, they were sealed in paper bags and sent to property to await further analysis, if needed.
>
> Q.    How did you make this observation?
>
> A.    With my eyes.
>
> Q.    Did there come a time that you used any forensic tools to analyze the baton and flashlight?
>
> A.    No further examinations were done forensically on the items.
>
> Q.    Who made the decision not to have those items examined?
>
> A.    I did.
>
> Q.    Why did you make that decision?
>
> A.    Based upon the statements from the officers, based upon the eyewitnesses statements, from Mr. Haywood who was an independent witness who was the 911 caller who stated that

Mr. Willie Jackson was never struck by any officers with their hands or with any other object, based upon the medical examiner's findings, that there were no other injuries that were consistent with blows of either a baton or flashlight to Mr. Jackson's body.

Based on all those factors and Mr. Jackson's injury to the back of his head which would be consistent with him falling to the ground and striking his head on the concrete curb, based on those factors and reviewing these factors with the district attorney's office and reinterviewing Mr. Haywood with the district attorney's office, it was determined that these items were not used on Mr. Jackson the way Ms. Jackson had alleged.

Bottari Dep. 44-46: 4-25, 2-3.  As such, the County Defendants take the position that a finding was made that the batons and flashlights were not material items of evidence in the investigation and they were subsequently released to Officers Breuer and Cipriano in May 2012.

The County Defendants dispute Plaintiff's contention that she is unable to test the flashlights and batons for "forensically significant evidence" since they were returned to the Officers in May 2012.  County Defs.' Opp. at 5.  According to Defendants' counsel, this evidence has been made available to Plaintiff's counsel for inspection and testing and she has refused to avail herself of the opportunity to review the items herself.  *Id.*  Counsel states that these items remain available to Plaintiff's counsel.  *Id.*  Further, the County Defendants point out that Plaintiff's counsel has the ability to retain an expert to "determine whether any of Willie Jackson's injuries are consistent with his body being struck by any of those objects."  *Id.* at 5-6.  As such, the County Defendants conclude that Plaintiff's representations in the instant motion amount to nothing more than speculation, rather than any evidence of actual spoliation.

Having reviewed the submissions of both sides, and applying the existing law on spoliation, the Court is hard-pressed to find proof of spoliation here.  In addition, having been

afforded the opportunity to depose Detective Bottari, the individual principally involved in the investigation of the decedent's death, Plaintiff has yet to offer any evidence that would indicate that the batons and flashlights were tainted in any fashion simply by their return to Officers Breuer and Cipriano. Plaintiff's counsel has been given an opportunity to inspect and test the evidence at issue, but has declined to do so, taking the position that the evidence is tainted. However, Plaintiff provides no good faith factual basis concerning by whom, in what way, or at what point these pieces of evidence were "significantly altered" as a result of the County Defendants' actions. The argument here does not reach above the level of conjecture.

At the outset, the Court notes that the spoliation doctrine is predicated on "evidence actually exist[ing] and [being] destroyed." *Orbit One Commc'ns v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010). Here, the batons and flashlights were not "destroyed." Plaintiff's counsel assumes that there ***must have been*** hair, and/or fibers on the batons which counsel argues were destroyed sometime between Detective Bottari taking possession of them and their return to Officers Breuer and Cipriano. By way of analogy, the Court directs attention to *Khaldei v. Kaspiev*, 961 F. Supp. 2d 564 (S.D.N.Y. 2013). In *Khaldei*, plaintiff argued that the act of moving photographs to a remote storage location was the equivalent of spoliation of relevant evidence. *Id*. at 569. The prior location of the photographs, namely, Plaintiff's apartment, was still intact and able to be inspected. *Id.* The court found that to the extent an argument was being made that temperature, humidity, or other conditions were relevant to the case, there was no evidence presented that these conditions had been destroyed or altered in any way. *Id*. at 570. Rather, the court in *Khaldei* found that such argument "does nothing to show that there was destruction or significant alteration of actual evidence – that is, the photographs themselves." *Id*.

Accordingly, the court held that "because plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions." *Id*. (*citing Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007) ("[S]peculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence.").

In the current circumstances, the mere relocation of the batons and flashlights from the SCPD Property Section back to Officers Breuer and Cipriano after no criminal wrongdoing was found is not the equivalent of the destruction or significant alteration of that evidence. Other than the account of Ms. Jackson who confirmed that the decedent was hit with a "stick" on some unspecified part of his body, there are no other witnesses who corroborated that account. Plaintiff suggests that a "Ramona Rumpy" witnessed the April 2, 2011 incident and was "present at the Suffolk County precinct that night and corroborated that Laura Jackson was clear when she told the Detective that one of the officers hit the decedent on the head with an object." Pl.'s Mot. at 3. Plaintiff asserts that "Ms. Rumpy states that her memory recalls that Laura Jackson said a baton." *Id.* However, the Court points out that no declaration or affidavit has been provided by Ms. Rumpy in support of the instant motion. Moreover, when asked about Ms. Rumpy at his deposition, Detective Bottari said he had never heard of Ms. Rumpy. Bottari Dep. at 92:9-18.

Significantly, the independent Medical Examiner conducted an autopsy which determined that the manner of death was by falling – not by the impact of an instrument. Based on all of the circumstances presented, the Court finds Plaintiff's assertions that relevant evidence was spoliated by the County Defendants to be a matter of speculation. *See Dilworth v. Goldberg,* No. 10 Civ. 2224, 2014 WL 998422, at *2 (S.D.N.Y. Mar. 17, 2014) (finding that plaintiffs' motion

for spoliation sanctions "rests on pure speculation" about the existence of certain documents which is insufficient to sustain such a motion); *See In re Take-Two Interactive Software, Inc. Derivative Litigation*, No. 06 Civ. 5279, 2009 WL 1066251, at *5 (S.D.N.Y. Apr. 21, 2009) (denying sanction for spoliation where the "[p]laintiffs' assertions concerning the prejudicial impact of the destroyed documents [were] premised entirely on speculation").

### A.    Duty to Preserve

The first element a party must show when seeking sanctions for the destruction of evidence is "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." *Chin*, 685 F.3d at 162; *Residential Funding Corp.*, 306 F.3d at 107. The Second Circuit has determined that "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu*, 247 F.3d at 436 (citing *Kronisch*, 150 F.3d at 126). Pursuant to this obligation, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake IV*, 220 F.R.D. at 217; *accord Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 108 (E.D.N.Y. 2012). "In this respect, 'relevance' means relevance for purposes of discovery, which is 'an extremely broad concept.'" *Orbit One Commc'ns, Inc.*, 271 F.R.D. at 436 (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)). Therefore, "[w]hile a litigant is under no duty to keep or retain every document in its possession[,] it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake IV*, 220 F.R.D.

at 217 (internal quotations and alterations omitted); *see Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009).

The duty to preserve arises, not when litigation is certain, but rather when it is "reasonably foreseeable." *Byrnie*, 243 F.3d at 107; *see In re Vitamin C Antitrust Litig.*, No. 05 Civ. 453, 2013 WL 504257, at *9 (E.D.N.Y. Feb. 8, 2013) ("[T]he law is clear that the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation, and that this obligation may arise prior to the filing of a suit if the litigation is reasonably anticipated.") (quotations omitted); *Toussie v. Cnty. of Suffolk*, No. 01 Civ. 6716, 2007 WL 4565160, at *6 (E.D.N.Y. Dec. 21, 2007); *F.D.I.C. v. Malik*, No. 09 Civ. 4805, 2012 WL 1019978, at *1 n.1 (E.D.N.Y. March 26, 2012) (holding that duty to preserve arose when attorneys who allegedly destroyed documents represented the plaintiff in the underlying transaction at issue); *In re Semrow*, No. 03 Civ. 1142, 2011 WL 1304448, at *3 (D. Conn. March 31, 2011) (holding that duty to preserve vessel arose prior to commencement of suit because the fact that fatalities occurred should have put party on notice of future litigation); *Siani v. State Univ. of New York at Farmingdale*, No. 09 Civ. 407, 2010 WL 3170664, at *6 (E.D.N.Y. Aug. 10, 2010) (holding that receipt of letter informing defendants of alleged discrimination and intent to pursue claim triggered duty to preserve); *Creative Res. Gr. of New Jersey, Inc. v. Creative Res. Grp.*, 212 F.R.D. 94, 106 (E.D.N.Y. 2002) (concluding that the duty to preserve arose months prior to the commencement of the lawsuit when the problems that eventually led to the filing of the lawsuit first surfaced).

The Court has already found that the batons and flashlights themselves have not been spoliated and have, moreover, been offered for inspection to Plaintiff's counsel. The proposition

that forensic evidence has been lost is speculative and the Court generally need not assess the three-part test for spoliation since none was found here in the first instance. County Defs.' Opp. at 8. However, based on a review of the timeline presented, the Court finds that the County Defendants certainly had, and continue to have, an obligation to preserve the batons and flashlights that were in the custody of Officers Breuer and Cipriano on April 2, 2011.

In light of Laura Jackson's statement that the decedent was hit with a "stick" on the date of the incident, Detective Bottari acknowledged that the batons and flashlights were collected and preserved in the SCPD Property Section until May 28, 2012. These items of evidence were undisputedly relevant, especially in light of Ms. Jackson's statement. *Fujitsu*, 247 F.3d at 436. As such, Plaintiff's counsel correctly points out that the County Defendants' duty to preserve this evidence was triggered immediately upon the commencement of the homicide investigation on April 2, 2011.

Notwithstanding the foregoing circumstances, the Court finds the May 28, 2012 release of the flashlights and batons to the SCPD Officers - - after Plaintiff had filed a Notice of Claim in April 2011 and after the instant lawsuit commenced in March 2012 - - is inconsistent with the duty to preserve relevant evidence. Although the Court does not determine the mere release of this evidence from the custody of the SCPD Property Section to be spoliation, the Court finds the fact that the release occurred while the Defendants were aware of the relevance, even if disputed, of the batons and flashlights raises a concern about preservation obligations. This concern is highlighted by the fact that these items were being returned to the very officers who were accused of committing civil rights violations and tortious conduct against the decedent. Detective Bottari's testimony lends some credence to the argument of Plaintiff's counsel that the County

18

did not articulate its preservation obligations to its personnel:

> Q. Did you give anyone else notice that you would be…releasing the batons and flashlights?
>
> A. No.
>
> Q. Did you ever see a notice from the county attorney's office that there was a civil case pending?
>
> A. At this point when I released these items, I had no idea there was…civil litigation pending.
>
> ****
>
> Q. It is your statement that you did not get any communication from the county attorney's office to preserve evidence?
>
> A. I did not, no.
>
> Q. You didn't get any communication from the police commissioner or his employees to preserve evidence?
>
> A. I did not and if I did, we would still have these items with us.

Bottari Dep. at 58-59:17-25, 2-19. Based on this testimony, the Court finds that the County Defendants had a duty to preserve relevant evidence, namely, the batons and flashlights, and to retain those items in the custody of the SCPD Property Section.

### B. Culpable State of Mind

"Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 195 (S.D.N.Y. 2007); *see Residential Funding*, 306 F.3d at 107-08. Failures to preserve relevant evidence occur "'along a continuum of fault - ranging from innocence through the degrees of negligence to intentionally.'" *Reilly*, 181 F.3d at

267 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)). In this Circuit, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Residential Funding Corp.*, 306 F.3d at 108 (quoting *Byrnie*, 243 F.3d at 109) (internal alterations and emphasis omitted); *Curcio*, 283 F.R.D. at 111. "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." *In re Pfizer Secs. Litig.*, 288 F.R.D.297, 2013 WL 76134, at *14 (S.D.N.Y. 2013) (internal quotations omitted); *accord Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 418-19 (S.D.N.Y. 2010)). A party is negligent even if the failure "results from a pure heart and an empty head." *In re Pfizer Secs. Litig.*, 2013 WL 76134, at *14; *Curcio*, 283 F.R.D. at 111.

Although the failure to institute a "litigation hold" is not negligence *per se*, whether the party implemented good document or evidence preservation practices is a factor that courts should consider. *Chin*, 685 F.3d at 162; *see Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010). The Court notes further that "[t]he preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Orbit One Commc'ns*, 271 F.R.D. at 437 (quoting *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 197-98 (S.D.N.Y. 2007)); *Neverson-Young v. BlackRock, Inc.*, No. 09 Civ. 6716, 2011 WL 3585961, at *3 (S.D.N.Y. Aug. 11, 2011) (finding plaintiff who donated her laptop "merely negligent" based on the fact that "[i]n contrast to corporate actors . . . [plaintiff] is unsophisticated and unaccustomed to the preservation requirements of litigation.").

Having held that there was no spoliation and having reviewed the circumstances in which the flashlights and batons were released from the SCPD Property Section, the Court does not find "bad faith" or "gross negligence" here. First, the Court points out that Detective Bottari's release of these items followed a thorough investigation into their relevance. As Bottari testified, there was no forensic data found on the baton or flashlights but they were, nevertheless, collected. Second, Bottari provided the Office of the Medical Examiner with Laura Jackson's account that her late husband was struck by a "stick." That information was taken into account by the Medical Examiner's Office in issuing the autopsy report. Third, the eventual release of these items over one year following the homicide investigation came at a time when no criminal wrongdoing against Officers Breuer or Cipriano had been established. As such, the Court finds that the release of these items amounted to negligence. *Neverson-Young*, 2011 WL 3585961, at *3; *Cohalan v. Genie Industries, Inc.*, No. 10 Civ. 2415, 2013 WL829150, at *9 (S.DN.Y. Mar. 1, 2013) (finding "evidence in the record that might support a finding of negligence" in a spoliation sanctions motion).

A finding of negligence is further supported by Bottari's testimony showing a lack of directives from the County Attorney's Office regarding the County Defendants' preservation obligations during the pendency of a homicide investigation. Surprisingly, it appears that no litigation hold was communicated to Detective Bottari prior to or at the time he released the evidence on May 28, 2012 – despite the fact that a Notice of Claim had been filed over one year earlier and a lawsuit was commenced just two months earlier.

## C. Relevance of Evidence

Relevance may be assumed where the breaching party acted in bad faith or with gross negligence. *Neverson-Young*, 2011 WL 3585961 at *2; *Orbit One Comm'cns*, 271 F.R.D. at 441 (refusing to presume relevance where the evidence was merely destroyed due to the party's failure to abide by recommended preservation practices). However, where the spoliating party has acted only negligently, the moving party must make a showing that the lost materials were relevant. *In re Pfizer*, 2013 WL 76134, at *15; *Harkabi*, 275 F.R.D. at 419-20. A party may establish relevance by "'adducing sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction.'" *Harkabi*, 275 F.R.D. at 420 (quoting *Residential Funding Corp.*, 306 F.3d at 109) (interanal alterations omitted). "Courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from that destruction." *Residential Funding Corp.*, 306 F.3d at 109 (internal alterations and citations omitted); *accord Slovin v. Target Corp.*, No. 12 Civ. 863, 2013 WL 840865, at *5 (S.D.N.Y. March 7, 2013).

There is no question that the County Defendants had a duty to preserve the evidence at issue. As noted, the batons and flashlights were not destroyed. The release of those items back to Officers Breuer and Cipriano was, at worst, an act of negligence. In light of the fact that Laura Jackson's account of what she saw was presented to the Medical Examiner's Office, in addition to Detective Bottari's testimony that no forensic data was found on these items, the Court finds that the Plaintiff has not provided any non-speculative basis to show that had Bottari not released

these items, there would have been relevant evidence favorable to Plaintiff's claim. *See Simoes*

*v. Target Corp.*, No. 11 Civ. 2032, 2013 WL 2948083, at *7 (E.D.N.Y. Jun. 14, 2013) (since

destruction of evidence was negligent, moving party faced a higher threshold to prove relevance).

No viable information has been presented that the "allegedly despoiled evidence would have

been unfavorable to the County." County Defs.' Opp. at 13. Accordingly, a request for an

adverse inference must be denied. *See Treppel*, 249 F.R.D. at 12. Likewise, the Court declines

to impose sanctions on the County Defendants. *Simoes*, 2013 WL 2948083, at *7 ("Because the

present record does not satisfy the relevance element, plaintiff's motion for spoliation sanctions

in the form of an adverse inference must fail."). The Court notes, however, that there is nothing

preventing Plaintiff from making an argument based on negligence to a jury at the trial of this

action in the event Plaintiff can establish a proper foundation.

## V.     CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's motion for the imposition

of sanctions based on spoliation.


                                                   **SO ORDERED.**

Dated:  Central Islip, New York
         March 31, 2014


                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge