# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

№ 12-CV-1455 (JFB)(AKT)

IN THE MATTER OF THE CLAIM OF THE ESTATE OF WILLIE JACKSON, BY HIS ADMINISTRATRIX SHANTA JACKSON,

Plaintiff,

VERSUS

COUNTY OF SUFFOLK ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
July 15, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiff the Estate of Willie Jackson ("plaintiff" or the "Estate") brings this action against numerous defendants associated with Suffolk County (the "County Defendants") based on an incident on April 2, 2011, between Willie Jackson ("decedent") and Suffolk County Police Department ("SCPD") officers, which ultimately led to decedent's death. Pending before the Court is plaintiff's timely motion, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, appealing Magistrate Judge A. Kathleen Tomlinson's March 31, 2014 Order denying plaintiff's request for spoliation sanctions, including the entry of a default judgment (the "Spoliation Order," Docket No. 65).[1] (Appeal, Docket No. 66.)

For the following reasons, the Court adopts the thorough and well-reasoned Spoliation Order in its entirety and denies plaintiff's motion for spoliation sanctions.

## I. BACKGROUND

Plaintiff alleges, *inter alia*, that, around midnight on April 2, 2011, defendants SCPD Officers Ronald Breuer and Eugene Cipriano were "reckless, careless and negligent in their actions in beating [decedent] with flashlights, batons and, upon information and belief, other weapons." (Am. Compl. ¶ 33.) After this alleged use of excessive, deadly force, decedent was transported to the Good Samaritan Hospital Emergency Department for treatment, where he was pronounced dead at 2 a.m. (*Id.* ¶¶ 35–36, 38.) Later that day, Maura DeJoseph, from the Suffolk County Office

---

[1] Although the County Defendants argue that the appeal is untimely under Rule 72(a) and this Court's Individual Rules, there is no evidence that plaintiff received the Spoliation Order before April 3, 2014, the date it was entered onto the docket. Therefore, the Court finds that the appeal is timely.

of the Medical Examiner, conducted an autopsy. (*Id.* ¶ 39.) According to plaintiff, "the Autopsy Report illustrates the unnecessary and excessive use of physical and deadly force" upon decedent, who "received multiple contusions (bruises) in and around his body." (*Id.* ¶ 40.) Plaintiff claims the Autopsy Report states the cause of death as "ACUTE CONCUSSIVE HEAD INJURY DUE TO BLUNT IMPACT," and the manner of death as "HOMICIDE." (*Id.* ¶¶ 43–44.)

On August 20, 2013, plaintiff moved for sanctions against the County Defendants for their alleged failure to preserve the batons and flashlights that were in the possession of Breuer and Cipriano on April 2, 2011. Plaintiff's theory is that one of these officers struck decedent with a baton or flashlight, causing his head injury and death. As Magistrate Judge Tomlinson noted, plaintiff's argument principally rests on the statement of decedent's widow, Ms. Laura Jackson ("Ms. Jackson"), that one of the SCPD officers hit her husband with a "stick." In light of that statement, SCPD Detective Ronald Bottari initially transferred the officers' batons and flashlights to the SCPD Property Section to preserve them as evidence from the scene. A little over a year later, on May 24, 2012, Bottari released the items to the officers upon their request and without notice to plaintiff's counsel. No litigation hold had been placed on these items, and no forensic testing had been done, either. Plaintiff argued that these items were "key pieces of evidence to allow Plaintiff the chance to support their case" and have "been destroyed" due to the County Defendants' actions.[2] She requested that Magistrate Judge Tomlinson strike defendants' pleadings, enter a default judgment, award plaintiff costs and attorney's fees, and provide any further appropriate relief. Plaintiff did not request an adverse inference alone.

By Order dated March 31, 2014, Magistrate Judge Tomlinson denied plaintiff's motion for spoliation sanctions. After an extensive recitation of the facts, Magistrate Judge Tomlinson found no spoliation in the first instance. She noted that plaintiff had deposed Bottari, had offered no evidence that would indicate the items were tainted simply by their return to the officers, and has refused the County Defendants' offers to inspect and test the items at issue. Magistrate Judge Tomlinson also emphasized that (1) Bottari testified that he reviewed the evidence before returning the items to the officers and found no blood or hair on them at all; (2) no other witnesses corroborated, through credible evidence, Ms. Jackson's account that decedent was hit with a "stick" (on an unspecified part of his body); and (3) the independent medical examiner, DeJoseph, concluded that decedent died because he was pushed by another and fell backward and, despite being informed of Ms. Jackson's statement, did not mention any injuries consistent with blows to the body from a flashlight or baton. Thus, Magistrate Judge Tomlinson concluded that plaintiff had provided "no good faith factual basis concerning by whom, in what way, or at what point these

---

[2] The Court notes that, in response to an inquiry by Magistrate Judge Tomlinson during a hearing on June 11, 2013, when counsel first raised the spoliation issue, plaintiff's counsel reported that she did not request to inspect this evidence around the time she filed the complaint on March 20, 2012. (Spoliation Order, at 7.) There also is no evidence that plaintiff requested to inspect the items before May 24, 2012. Plaintiff apparently discovered in February 2013 that the Property Section previously had the items inventoried, but she has not explained why she did not attempt to uncover and inspect any batons and flashlights earlier even though her complaint indicates her awareness of their existence and supposed relevance, as well as DeJoseph's findings in the Autopsy Report.

2

pieces of evidence were 'significantly altered' as a result of the County Defendants' actions." She found the evidence had not been "destroyed" by virtue of its return to the officers and dismissed as speculation the assumption that there must have been hair and/or fibers that were destroyed sometime between Bottari taking possession and the items' return.[3]

In addition, Magistrate Judge Tomlinson concluded that plaintiff had failed to satisfy the three-part test for imposing spoliation sanctions. She first found that the County Defendants had a duty to preserve the evidence. Plaintiff does not dispute that finding. Second, Magistrate Judge Tomlinson found no "bad faith" or "gross negligence" on the part of the County Defendants in releasing the items, because there was no spoliation and in light of Bottari's actions before he released the items. Instead, she found that the record supported a finding of negligence. Plaintiff disputes that finding, and she argues that the defendant acted in bad faith. Third, Magistrate Judge Tomlinson found, in light of Bottari's testimony that no forensic data was found on these items and the medical examiner knew of Ms. Jackson's statement, that "Plaintiff has not provided any non-speculative basis to show that had Bottari not released these items, there would have been relevant evidence favorable to Plaintiff's claim." Thus, Magistrate Judge Tomlinson saw no basis to impose sanctions, including an adverse inference against the County Defendants. She noted, however, "that there is nothing preventing Plaintiff from making an argument based on negligence to a jury at the trial of this action in the event Plaintiff can establish a proper foundation." Plaintiff also disputes that finding.

## II. STANDARD OF REVIEW

This Court may reverse a magistrate judge's order on a nondispositive pre-trial matter only if the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("A magistrate . . . may issue orders regarding nondispositive pretrial matters. The district court reviews such orders under the 'clearly erroneous or contrary to law' standard."). Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72, *de novo* review is reserved for "those portions of the report or specified proposed findings or recommendations to which objection is made" involving dispositive matters—not to nondispositive pre-trial matters. *See, e.g.*, *Thomas E. Hoar, Inc.*, 900 F.2d at 525 (explaining standard for review of magistrate judge decisions); *New York v. Mountain Tobacco Co.*, 953 F. Supp. 2d 385, 389–90 (E.D.N.Y. 2013) (same).

Plaintiff urges this Court to review Magistrate Judge Tomlinson's decision *de novo*, while defendant argues that this Court should review the decision for clear error. A court may impose sanctions for spoliation under Rule 37 of the Federal Rules of Civil Procedure when a party spoliates evidence in violation of a court order, or under its inherent power to control litigation. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation.") In *Kiobel v. Milson*, 592 F.3d 78, 84–105 (2d Cir. 2010), the Second Circuit issued split concurring opinions on whether a magistrate judge has the authority to impose sanctions

---

[3] Although the analysis focuses on spoliation through the return of the items, the Court finds that Magistrate Judge Tomlinson's reasoning implicitly recognizes and addresses the claim that spoliation must have occurred after the transfer, as well.

3

under Rule 11 of the Federal Rules of Civil Procedure. Courts have expressed concern that the conflicting conclusions in those opinions also potentially could apply to other grounds for sanctions, including under Rule 37 or the Court's inherent power. *See, e.g.*, *Gelicity UK Ltd. v. Jell-E-Bath, Inc.*, No. 10 CV 5677 (ILG)(RLM), 2014 WL 1330938, at *1 n.1 (E.D.N.Y. April 1, 2014) (Report and Recommendation) ("Because the Second Circuit has not resolved the issue of a magistrate judge's authority to sanction under Rule 11, its inherent powers, or 28 U.S.C. § 1927, this Court, out of an abundance of caution, addresses [plaintiff's] motion in a report and recommendation."); *Diversified Control, Inc. v. Corning Cable Sys., LLC*, No. 05-CV-0277 (A)(M), 2010 WL 1371662, at *1 n.2 (W.D.N.Y. April 6, 2010) ("The discussion in *Kiobel* suggests that this uncertainty may now also extend to a Magistrate Judge's authority to impose non-dispositive sanctions under Rule 37."); *see also In Re Kessler*, No. 05 CV 6056(SJF)(AKT), 2009 WL 2603104, at *3–21 (E.D.N.Y. March 27, 2009) (issuing a Report and Recommendation with respect to spoliation motion that invoked the court's inherent power).[4]

In an abundance of caution, the Court has treated the Spoliation Order as a Report and Recommendation and conducted a *de novo* review of the entire Spoliation Order.

---

[4] Courts in other circuits have also struggled with the issue of whether a magistrate judge has the inherent power to sanction, and the accompanying level of review that is required if it is authorized. *Compare Apple Inc. v. Samsung Elecs. Corp.*, 888 F. Supp. 2d 976, 985–89 (N.D. Ca. 2012) (holding that magistrate judges have inherent power to sanction for spoliation, and decision to impose adverse jury instruction is not dispositive sanction subject to *de novo* review), *with Redick v. White*, 456 F. App'x 191, 193-94 (4th Cir. 2011) (unpublished per curiam) (holding that district court's review of magistrate judge's denial of motion for bad faith sanctions against non-party is subject to *de novo* review).

Having considered the issue *de novo*, the Court reaches the same conclusion as Magistrate Judge Tomlinson for the reasons discussed in her well-reasoned and thorough Spoliation Order. As discussed in detail below, the Court finds plaintiff's arguments and objections to be without merit.

### III. DISCUSSION

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West*, 167 F.3d at 779. To succeed on a spoliation motion, the movant must show "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *see also In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 325 (S.D.N.Y. 2013) (quoting *Residential Funding Corp.*, 306 F.3d at 107). As discussed below, having conducted a *de novo* review, the Court adopts Magistrate Judge Tomlinson's analysis in its entirety. The Court focuses on the three findings plaintiff objects to— namely, (1) no spoliation in the first instance; (2) the County Defendants were only negligent in failing to preserve; and (3) no indication that, but for the purported spoliation, the evidence would have been favorable to plaintiff.

### A. No Spoliation in the First Instance

As a threshold matter, it is clear, as Magistrate Judge Tomlinson noted, that the release of the batons and flashlights to the officers, in itself, is not spoliation because the evidence was not "destroyed" by that act

alone. In addition, plaintiff does not dispute that she has been offered access to the items by the County Defendants. Instead, plaintiff contends that spoliation necessarily exists because Bottari broke the "chain of custody" and, therefore, "[t]here is no true way to overcome the obstacle of identifying and authenticating generic and fungible items" or know whether the officers have destroyed evidence. (Appeal Mem., at 4; *see also* Appeal Reply Mem., at 2 ("The Court should have concluded that evidence taken out of the chain of custody at the request of persons interested in the outcome of the litigation is spoliation.").) Plaintiff also contends that Magistrate Judge Tomlinson should have inferred that the items would have been relevant and favorable to plaintiff, and she implies that the Court cannot trust that the items offered for inspection are actually the items in question. (Appeal Mem., at 8.) As set forth below, plaintiff simply has no evidence that any potential fragments of tissue, hair, DNA, or of any similar substances were lost from the flashlights and batons forever.

Plaintiff deposed Bottari, who testified that he told DeJoseph about Ms. Jackson's statement about the "stick" and that he saw no hairs or blood on the items when he took custody of them. Although plaintiff makes conclusory assertions that Bottari is unreliable because he has been influenced by a desire to maintain a so-called "Blue Wall of Silence" (s*ee* Appeal Mem., at 12), plaintiff has pointed to no evidence that raises questions about what Bottari told DeJoseph or what Bottari saw on the items. Similarly, with respect to the flashlights and batons themselves, plaintiff's complaint that she would be under an "insurmountable burden of proving the identity and authenticity" of these items is entirely speculative. To the extent the nature and size of the flashlight and baton may somehow be relevant at trial, there is no indication that the items cannot be properly authenticated for those purposes.

In short, the Court concludes that Magistrate Judge Tomlinson correctly disregarded plaintiff's speculation regarding the potential evidence she could have found and the state of the evidence at this time. Plaintiff has pointed to no other evidence in the record, beyond Ms. Jackson's testimony about a "stick" (which is contradicted by the rest of the record) that the officers hit decedent with a baton, flashlight, or any other object. Beyond that, however, plaintiff has presented no evidence that there *was* hair and/or fibers on the items, or that the Autopsy Report is incorrect. For instance, plaintiff has submitted no expert report disputing DeJoseph's findings—an independent conclusion that decedent died because he was pushed backward and fell, with no findings of any injuries consistent with strikes from a baton, flashlight, or stick. There is no basis to conclude that the officers have attempted to (or have) sanitized the items, such that there is no possibility decedent's DNA could be found on them. In fact, to this day, plaintiff's counsel has failed to inspect or test the items to determine whether they have been subject to spoliation of any type.[5]

---

[5] On the issue of the continuing ability to test the items, defendants focused on the following in their briefing before Magistrate Judge Tomlinson:

> First, the flashlights and batons have been made available to plaintiff's attorney for inspection and testing, and are still available to date. Also, plaintiff may retain an expert to inspect the items to determine whether any of Willie Jackson's injuries are consistent with his body being struck by any of those objects. Moreover, it is well known, even to laymen, that forensically significant material, such as hairs, fibers, DNA or blood, may still be found upon objects, years later and after the handling of the objects by people. Plaintiff's attorney, however,

5

Thus, Magistrate Judge Tomlinson correctly refused to credit plaintiff's conjectures about the destruction or lack of preservation of evidence in order to find spoliation. *See, e.g.*, *Dilworth v. Goldberg*, --- F. Supp. 2d ---, No. 10 Civ. 2224(JMF)(GWG), 2014 WL 998422, at *2 (S.D.N.Y. Mar. 17, 2014) ("[T]he spoliation doctrine is predicated on evidence actually existing and being destroyed. Thus, for sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence *actually existed*. . . . Case law is clear, however, that speculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence." (internal quotation marks and citations omitted) (alterations in original)); *see also United States v. Welch*, No. 5:11 CR 412, 2014 WL 1912545, at *2 (N.D. Ohio May 12, 2014) ("[T]he failure to collect the evidence of the fingerprints, pictures, or DNA is not an intentional destruction of evidence amounting to spoliation"); *Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) ("[B]ecause plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions." (citation omitted)).

Accordingly, the Court concludes that Magistrate Judge Tomlinson's determination that there was no spoliation of evidence in the first instance was correct. In any event, even assuming *arguendo* that the transfer of the items impeded the ability to recover forensic evidence and that such action constituted spoliation, the Court concludes that, even if the County Defendants breached a duty to preserve such items from any potential degradation of forensic evidence, no sanction is warranted based upon plaintiff's inability to satisfy the other prongs of the spoliation test.

### B. Culpable State of Mind

Plaintiff challenges Magistrate Judge Tomlinson's finding that the County Defendants at most acted negligently when they released the flashlights and batons to the SCPD officers. Plaintiff's briefing is not entirely clear, but she contends that the County Defendants' conduct establishes willfulness and intent to abuse the judicial process by taking evidence out of the chain of custody after litigation commenced, and that the County Defendants were, at the very least, grossly negligent by not imposing a litigation hold. (Appeal Mem., at 6.)

Magistrate Judge Tomlinson concluded that, although the County Defendants failed to institute a litigation hold and nobody advised Bottari about the lawsuit, there was no gross negligence or bad faith surrounding the release of the items from the SCPD Property Section, because Bottari testified that he thoroughly investigated the objects' relevance and gave weight to the lack of forensic data on them, the findings in the Autopsy Report, and the lack of any criminal proceedings against the officers. Again, although plaintiff questions Bottari's motivation and testimony, there is nothing in the record to suggest that he was operating in bad faith, or that he was grossly negligent.

Moreover, as Magistrate Judge Tomlinson noted, "[t]he failure of a party to institute a litigation hold does not constitute

---

refused the defendant's offer to take and test the items, and seeks only the most drastic sanction to remedy a situation of which she now complains. Ms. Smith speculates in her moving papers that the scientific evidence was, definitely, on the equipment at one time, but is no longer detectable. Yet Ms. Smith offers no explanation, experts' affirmation, or any evidence to substantiate her claim.

(Spoliation Opp'n Mem., at 5–6.)

gross negligence *per se*." *Pfizer Inc. Secs. Litig.*, 288 F.R.D. at 315 (citing *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012). Rather, "the better approach is to consider the failure to adopt good preservation practices as one factor in the determination of whether discovery sanctions should issue." *Id.* (quoting *Chin*, 685 F.3d at 162) (internal quotation marks and brackets omitted). Here, in light of the facts and circumstances in the record, the Court agrees and concludes that the County Defendants did not act in bad faith and with a desire to stymie plaintiff's case, nor did the failure to impose the litigation hold constitute gross negligence. *See generally United States v. Spalding*, 438 F. App'x 464, 466–67 (6th Cir. 2011) (affirming district court's refusal to give spoliation instruction where there was no basis to conclude that evidence technician acted in bad faith or was reckless in destroying sandwich box and other items in defendant's vehicle after lifting fingerprints and obtaining DNA sample); *United States v. Shea*, 211 F.3d 658, 668 (1st Cir. 2000) (reasoning fact that government returned truck to its owner after collecting of prints did not amount to spoliation even though defendant claimed print came from a different truck).

### C. Relevance

Lastly, plaintiff challenges Magistrate Judge Tomlinson's conclusion that plaintiff has failed to show that, had Bottari not released these items, there would have been relevant evidence favorable to plaintiff's claim. Magistrate Judge Tomlinson found no viable information that the allegedly despoiled evidence would have been unfavorable to the County, because the batons and flashlights have not been destroyed, Ms. Jackson's account was presented to the medical examiner, and Bottari found no forensic data. According to plaintiff, Magistrate Judge Tomlinson (1) improperly ignored Ms. Jackson's statement that the officers struck decedent when they were on the ground; (2) failed to recognize that, had the items been preserved, "Plaintiff's expert would have been able to adduce whether the impressions on the decedent's head and the instrumentality at issue matched"; and (3) did not appreciate that Bottari did not turn over the items to the medical examiner because he was operating in bad faith.

In response, the County Defendants argue, *inter alia*, the following:

> Plaintiff's argument is premised upon multiple layers of speculation – the first being that those materials definitely existed upon the flashlights and batons, the second that those forensic materials were destroyed by virtue of the return of the flashlights and batons to the officers, and the third being that any forensic materials upon the items necessarily support plaintiff's claims. Those speculative propositions are not based on fact, as the findings of the Medical Examiner support that Jackson's trauma was consistent with a fall, not blow. The Medical Examiner determined Willie Jackson suffered blunt trauma to his head from falling and died as the result. It is also worth re-iterating that Detective Bottari conducted a visual examination of the flashlights and batons, failed to observe any hairs, fibers, or blood, determined the items were not evidence of the homicide, and returned the items to their owners after the case was closed as "non-criminal."

(Appeal Opp'n, at 3.) The County Defendants also note that, even if Mr. Jackson's biological materials were on the

batons or flashlights, the probative value of such evidence on the cause of death is limited given the undisputed fact that the officers were in close proximity to Mr. Jackson (who was bleeding), and had contact with him in the street and ambulance. (*Id.*) Thus, the County Defendants contend that "[t]he more telling evidence is whether or not Willie Jackson's fatal injuries were consistent with the flashlights or batons, and that testing may still be conducted." (*Id.*)

Having considered this issue *de novo* (including the above-referenced arguments by both sides), this Court reaches the same conclusion as Magistrate Judge Tomlinson. To show relevance, "the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." *Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 178 (E.D.N.Y. 2009) (quoting *Residential Funding Corp.*, 306 F.3d at 108–09). Relevance may be inferred from a sufficiently culpable state of mind, such as where documents were destroyed in bad faith or under "some circumstances" where defendants were grossly negligent in destroying documents. *See Residential Funding*, 206 F.3d at 109. Relevance may also be established through extrinsic evidence tending to show that the missing evidence w*ould have been relevant and favorable to* the moving party. *See id.*; *Scalera*, 262 F.R.D. at 178.

Here, Magistrate Judge Tomlinson correctly emphasized that plaintiff still has access to this evidence and the ability to challenge the medical examiner's conclusions.[6] Plaintiff's arguments regarding the relevancy determination, therefore, are based solely on conjecture. *See also United States v. Boxley*, 373 F.3d 759, 763 (6th Cir. 2004) ("Because the fingerprints were not likely to be lifted from the evidence notwithstanding the officers' actions, and because their actions were not in bad faith, the motion for a jury instruction on spoliation was properly denied."); *Sovulj v. United States*, No. 98 CV 5550FBRML, 2005 WL 2290495, at *5 (E.D.N.Y. Sept. 20, 2005) ("To allow an adverse inference here would not have the effect of restoring the plaintiff to her position absent the destruction of the x-ray, but rather would prejudice the defendant by allowing plaintiff to profit from the destruction of the x-ray when no evidence has been presented to support such an inference of its contents.").

In sum, the Court concludes that plaintiff has failed to demonstrate, under the particular circumstances of this case, that there has been spoliation of evidence by the County Defendants that warrants any type of sanction, including an adverse inference instruction. Nevertheless, as Magistrate Judge Tomlinson noted, plaintiff can still argue to the jury (assuming she establishes a proper foundation) that such an inference should be drawn.

---

[6] For instance, it is possible that an expert could inspect the items and the Autopsy Report and conclude that decedent's injuries are consistent with his body being struck by these objects.

8

## IV. CONCLUSION

Having reviewed plaintiff's motion and Magistrate Judge Tomlinson's entire Spoliation Order *de novo*, and for the reasons set forth in the thorough and well-reasoned Spoliation Order and in this Memorandum and Order, plaintiff's motion for the imposition of sanctions based upon spoliation is denied in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 15, 2014
Central Islip, NY

\*\*\*

Plaintiff is represented by Tarsha Smith of the Law Offices of Tarsha C. Smith, PO Box 779, Patchogue, NY 11772. The County Defendants are represented by Dennis M. Brown, Suffolk County Attorney, by Megan O'Donnell and Susan Flynn of the Suffolk County Attorney's Office, H. Lee Dennison Building, 100 Veterans Memorial Highway, Hauppauge, NY 11788.