UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Estate of Willie Jackson, by his Administratrix, Shanta Jackson,<br><br>*Plaintiff*,<br><br>– against –<br><br>County of Suffolk, *et al.*,<br><br>*Defendants*. | 2:12-CV-1455<br><br>**Not for Publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

This lawsuit is brought by Shanta Jackson, on behalf of the estate of her father, Willie Jackson, who was killed in an altercation with Suffolk County police officers. *See* Pl.'s 56.1 Resp. ¶¶ 3–5, 25, ECF No. 147. Currently pending before the court are a motion for summary judgment brought by several defendants, their motion to seal certain exhibits, and plaintiff's motion for reconsideration of a previous decision of the court. For the following reasons, the motion for summary judgment is granted in part and denied in part, the motion to seal is denied, and the motion for reconsideration is denied.

## BACKGROUND

*Factual History*

On April 2, 2011, defendant Officer Ronald Breuer and defendant Officer Eugene Cipriano, both of defendant Suffolk County Police Department, responded to a 911 call and encountered Willie Jackson, inebriated and attempting to enter a bar. *See id.* ¶¶ 3, 14–17; Breuer Supplementary Report, ECF No. 141-4; Cipriano Supplementary Report, ECF No. 141-5. Breuer and Cipriano approached Jackson, and then Breuer and Jackson began pushing each other. *See* Pl.'s 56.1 Resp. ¶¶ 17–18; Breuer Supplementary Report; Cipriano Supplementary

1

Report; L. Jackson Statement 3, ECF No. 141-8. Jackson ultimately either fell or was pushed to the ground, and he hit his head on the pavement. *See* Pl.'s 56.1 Resp. ¶¶ 5, 18; Breuer Supplementary Report; Cipriano Supplementary Report; L. Jackson Statement 3. Jackson was taken away in an ambulance and later succumbed to his injuries. *See* Breuer Supplementary Report; Cipriano Supplementary Report; L. Jackson Statement 3. The cause of death was ultimately determined to be "acute concussive head injury due to blunt impact," and the death was classified as a homicide by the Suffolk County medical examiner, Maura DeJoseph. Pl.'s 56.1 Resp. ¶¶ 5, 25.

There is a factual dispute as to how much force the officers used against Jackson. According to Jackson's wife, Laura, who witnessed the incident, one of the officers—presumably Cipriano—hit Jackson over the head with an unidentified object, which she described as "a stick." Pl.'s 56.1 Resp. ¶ 18. By contrast, another witness, Haywood Jennings Jr., the proprietor of the bar where the incident occurred, stated to police that the officers neither hit *nor even pushed* Jackson. *See* Jennings Statement 1–2, ECF No. 141-7.

Suffolk County Detective Jeffrey Bottari led an investigation into Jackson's death. *See* Pl.'s 56.1 Resp. ¶¶ 4, 33. Bottari testified that, as part of his investigation, in reliance on Laura Jackson's statement that one of the officers hit her husband with a stick, he collected Breuer's and Cipriano's batons and flashlights as evidence. Bottari Dep. 41:6–18, ECF No. 141-15. The medical examiner did not subject the batons and flashlights to testing, however, as she "did not feel that the injuries were consistent with a baton or a flashlight." DeJoseph Dep. 41:18–25, ECF No. 141-12.

On April 4, 2012, Detective Bottari interviewed Jennings in the presence of defendant Suffolk County Assistant District Attorney (ADA) Robert Biancavilla. *See* Pl.'s 56.1 Resp. ¶ 38. Jennings's version of events was consistent with the statement that he had given police a year

prior. *See id.* On April 16, 2012, Bottari presented the findings of his investigation to defendant Suffolk County District Attorney's Office, including his conclusions that Willie Jackson's death was "accidental" and that the homicide was "non-criminal." Bottari Supplementary Report, ECF No. 141-6; *see* Pl.'s 56.1 Resp. ¶¶ 4, 39. ADA Biancavilla decided not to present the case to a grand jury (*see* Pl.'s 56.1 Resp. ¶¶ 36, 54), and in or around May 2012 Bottari returned the batons and flashlights to Breuer and Cipriano (*see* Bottari Dep. 45:15–17). Bottari testified that he never had those items forensically examined because the other evidence in the case—specifically, the statements given by Jennings and the police officers, as well as the findings of the medical examiner—led him to conclude that the batons and flashlights "were not used on Mr. Jackson the way Mrs. Jackson had alleged." *Id.* at 44:2–45:3.

After Laura and Shanta Jackson filed a notice of claim, the police department opened an internal-affairs investigation into the conduct of the officers involved in Willie Jackson's death. *See* Pl.'s 56.1 Resp. ¶ 41. The investigation was first assigned to Lieutenant Donald Meyers, who performed no work on the case. *See id.* ¶ 42.[1] The internal-affairs investigation was then transferred to Lieutenant James Rafferty, who reviewed the notes, interviews, and evidence from the previously conducted homicide investigation and contacted Breuer and Cipriano regarding their actions on the night that Willie Jackson died. *See id.* ¶¶ 45, 47, 49–50. Rafferty did not interview any other witnesses but instead relied on the interviews that were conducted by the police immediately after the incident. *See id.* ¶ 51. Nor did he confer with anyone from the district attorney's office. *Id.* ¶ 52. Ultimately, on July 18, 2013, Rafferty concluded that the allegations that Cipriano used excessive force and that Breuer and Cipriano failed to administer medical attention were unfounded. Rafferty Mem. 18, ECF No. 142-1; *see*

---

[1] Meyers testified that he did not have sufficient time to begin working on the investigation before he was transferred out of the Internal Affairs Bureau. Meyers Dep. 10:5–8, 22:15–23, ECF No. 141-18.

3

*also* Pl.'s 56.1 Resp. ¶ 53. Rafferty also exonerated Breuer with regard to the allegation that he had used excessive force. Rafferty Mem. 18; Pl.'s 56.1 Resp. ¶ 53.

Defendant Suffolk County District Attorney Thomas Spota appointed a special prosecutor to present Willie Jackson's case to a grand jury. Pl.'s 56.1 Resp. ¶ 55. The special prosecutor presented the case to a grand jury in 2015, but the grand jury returned no true bill. *Id.* ¶ 56. The district attorney's office then closed the case. *Id.*

*Procedural History*

Plaintiff filed this lawsuit on March 20, 2012. *See* Compl., ECF No. 1. An amended complaint was subsequently filed on February 12, 2013. Am. Compl., ECF No. 27.

On August 20, 2013, plaintiff filed a motion for spoliation sanctions in connection with the return of the batons and flashlights to Breuer and Cipriano without any forensic testing having been performed. *See* Mot. for Sanctions, ECF No. 54. The motion was denied by the Honorable A. Kathleen Tomlinson, United States Magistrate Judge, on March 31, 2014. *Estate of Jackson ex rel. Jackson v. County of Suffolk*, No. 12-CV-1455 (JFB)(AKT), 2014 WL 1342957 (E.D.N.Y. Mar. 31, 2014). Plaintiff appealed that decision to the Honorable Joseph F. Bianco, United States District Judge, who treated Judge Tomlinson's decision as a report and recommendation and reviewed it de novo. *See Estate of Jackson ex rel. Jackson v. County of Suffolk*, No. 12-CV-1455 (JFB)(AKT), 2014 WL 3513403, at *3 (E.D.N.Y. July 15, 2014). Judge Bianco agreed with Judge Tomlinson and denied the motion for sanctions while noting that "plaintiff can still argue to the jury (assuming she establishes a proper foundation) that . . . an [adverse] inference should be drawn" from defendants' conduct. *Id.* at *8.

In January 2017, the moving defendants—Suffolk County (the County), its police department, its district attorney's office, District Attorney Spota, ADA Biancavilla, and former Suffolk County Police Commissioner Richard Dormer—moved for summary judgment as to

all claims against them. *See* Defs.' Original Br. 1–2, ECF No. 111-23. They also moved for leave to file two of their summary-judgment exhibits under seal. *See* Mot. to Seal, ECF No. 108. Judge Bianco allowed the exhibits to be filed under seal but stated that he would revisit the issue once plaintiff had an opportunity to oppose the sealing. *See* Sealing Order, ECF No. 110.

On May 30, 2017, plaintiff requested leave to amend her previously filed oppositions to defendants' two motions and to move for reconsideration of Judge Bianco's denial of the sanctions motion. *See* Fax 2, ECF No. 124. This request was granted. Plaintiff was afforded numerous extensions of the deadline to make these filings (*e.g.*, Order, Sept. 26, 2017), and the case was subsequently transferred to me. The three motions—the moving defendants' motion for summary judgment and motion to seal and plaintiff's motion for reconsideration—are now ripe for disposition.

## DISCUSSION

### I. The Motion for Summary Judgment

The moving defendants seek summary judgment with respect to all the claims against them. Because all the federal claims against these defendants are either legally unavailable or factually unsupported by the record, summary judgment is granted to the moving defendants on plaintiff's federal claims. Because federal claims remain against the nonmoving defendants, however, and because the moving defendants do not argue that the state claims against them lack merit, I retain supplemental jurisdiction over, and thus deny summary judgment as to, plaintiff's state claims.

### A. Improper Claims and Parties

Preliminarily, I note that two of the moving defendants are the Suffolk County Police Department and the Suffolk County District Attorney's Office. Neither is a suable entity, and

thus all of plaintiff's claims against these two defendants are dismissed. *See Barreto v. County of Suffolk*, 455 F. App'x 74, 76 (2d Cir. 2012) (ruling that "the Suffolk County District Attorney's Office" is "not an entity capable of being sued"); *Martinez v. County of Suffolk*, 999 F. Supp. 2d 424, 429 (E.D.N.Y. 2014) ("[T]he Plaintiff's claims against the Suffolk County Police Department cannot go forward because the Police Department has no legal identity separate and apart from Suffolk County." (citations omitted)).

Additionally, plaintiff brings her seventh cause of action under 42 U.S.C. § 1981. *See* Am. Compl. ¶¶ 97–106. But "§ 1981 does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018). Because all the defendants in this action are state actors, this claim is dismissed against all defendants. *See id.*

**B.     Legal Standard on Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether there is a genuine issue as to any material fact, '[t]he *evidence* of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). But "the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); then quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Thus, "[w]here it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *Id.* (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## C. Municipal Liability

Plaintiff brings several federal claims against Suffolk County, as well as against the individual defendants in their official capacities, which plaintiff acknowledges is equivalent to bringing the claims against the County itself (*see* Pl.'s Opp'n 49, ECF No. 147-2; *see also Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 639–40 (E.D.N.Y. 2018) (dismissing redundant official-capacity claims against municipal officials where municipality was also sued)). For the reasons set forth below, I grant summary judgment to the County on these claims.

"[A] municipality can be found liable under [42 U.S.C.] § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)).[2] "Thus, [the] first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.*

"The policy or custom need not be memorialized in a specific rule or regulation." *Daytree*, 332 F. Supp. 3d at 638 (quoting *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996)). "Instead, constitutional violations by government officials that are 'persistent and widespread' can be 'so permanent and well settled as to constitute a "custom or usage" with the force of law,' and 'thereby generate municipal liability.'" *Id.* at 638–39 (quoting *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992)). This type of "failure to act 'satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" *Esperanza v. City of New York*, 325 F. Supp. 3d 288, 309 (E.D.N.Y. 2018) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

---

[2] The same is true of claims brought under § 1985. *See Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979).

7

Deliberate indifference can be demonstrated via a failure-to-supervise or a failure-to-train theory. "[I]n the context of a failure to supervise case, deliberate indifference may be established by showing that policymaking officials deliberately ignored an obvious need for supervision." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 n.8 (2d Cir. 2004) (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). By contrast, "a failure to train claim . . . requires evidence as to the [municipality]'s training program and the way in which that program contributed to the violation." *Id.*

Here, plaintiff argues that former Commissioner Dormer, District Attorney Spota, ADA Biancavilla, and the County itself "permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal uses of force, beatings, and uses of weapons against minorities including, but not limited to, African American and/or Black persons by [Suffolk County] police officers." Pl.'s Opp'n 8. And she argues that the County is liable for "failure to train officers in measures to prevent asphyxiation" and for "failure to train and supervise officers in handling and preservation of evidence[,] . . . in administering medical care[, and] . . . in handling members of the population that are intoxicated." *Id.* at 7.

Although plaintiff has put forward a raft of evidence in support of her municipal-liability theories, very little of it bears any connection to the facts of this case. First, plaintiff points to a December 2013 article from *Newsday* that catalogs a variety of misconduct allegations against police officers from both Suffolk County and Nassau County. Pl.'s Ex. C, ECF No. 147-8. To be sure, "multiple civilian complaints against an officer regarding conduct similar to that exhibited toward a plaintiff is enough for a jury to find the requisite degree of indifference to support failure to supervise liability" (*Coggins v. County of Nassau*, 254 F. Supp. 3d 500, 520–21 (E.D.N.Y. 2017)), but among the dozens of allegations compiled by *Newsday*, only *one* appears to pertain to a defendant in this case, James O'Hagan (*see* Pl.'s Ex. C, at 19).

8

What is more, the prior allegation against O'Hagan—that he "'failed to give due care and attention to [a] complainant and complaint' and did a 'careless investigation'" (*id.*)—is dissimilar to plaintiff's allegations that O'Hagan failed to intervene to prevent, and assisted in a cover-up of, the killing of Willie Jackson (*see* Am. Compl. ¶¶ 3, 7–8, 32). Nor does the *Newsday* article establish a widespread custom of police violence in Suffolk County. Only three Suffolk County officers—none of whom are implicated in this case—are listed as being accused of using excessive force. *See* Pl.'s Ex. C, at 2–3, 5–6, 12.

Next, plaintiff presents the prosecution and conviction of former Suffolk County Police Chief James Burke as proof that "Suffolk County has a custom, policy, pattern and/or practice of permitting, ratifying and acquiescing to the use of excessive force." Pl.'s Opp'n 26.[3] Although it is true that "an unconstitutional governmental policy [can] be inferred from a single decision taken by the highest officials responsible for setting policy" (*City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)), there must nevertheless be "a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation" (*Esperanza*, 325 F. Supp. 3d at 308 (quoting *City of Canton*, 489 U.S. at 385)). Plaintiff establishes no link whatever between the actions of James Burke and the death of Willie Jackson.[4]

Next, plaintiff presents evidence of a U.S. Department of Justice investigation into discriminatory policing in Suffolk County. *See* Pl.'s Ex. E, ECF No. 154-10. This investigation ultimately led to a settlement, which plaintiff argues "is proof that the Defendants[ ] engaged

---

[3] Burke, who is not even mentioned in plaintiff's complaint, was sentenced to prison after being convicted of beating a shackled suspect who had stolen from Burke's vehicle a duffel bag containing pornography and sex toys. *See* Pl.'s Ex. D, ECF No. 147-8. Burke evaded federal prosecution for years due to the silence and cooperation of his subordinates. *See id.*

[4] More recently, the government has also accused Spota of participating in the Burke cover-up. *See* Pl.'s Ex. D. These allegations are yet to be proven, however. And even if Spota were to be found guilty of covering up one incident of police brutality, that would not constitute evidence that he covered up another, wholly unrelated crime.

9

in customs and practices" that led to Jackson's death. Pl.'s Opp'n 28. The settlement agreement, however, explicitly states that it "is not an admission by SCPD, the County, or any officer or employee of either entity that they have engaged in any unconstitutional, illegal, or improper activities or conduct." *Agreement Between the United States Department of Justice and Suffolk County Police Department*, Dep't Just. § X(a) (Jan. 13, 2014), https://www.justice.gov/sites/default/files/crt/legacy/2014/01/23/suffolk_agreement_1-13-14.pdf.[5] What is more, the allegation that was investigated by the Department of Justice was that the Suffolk County Police Department's "approach to the *Latino* community discourage[d] *Latino* victims from filing complaints and cooperating with the police, and that the [Police] Department fail[ed] to investigate crimes and hate-crime incidents involving *Latinos*." Pl.'s Ex. E, at 2 (emphasis added). Willie Jackson was African American. *See* Am. Compl. ¶¶ 14, 30, 66, 70, 85.[6] Although plaintiff claims that the Justice Department's "findings are also transferrable to the Black community" (Pl.'s Opp'n 28), she provides no evidence or basis for that assertion.

Lacking evidence of a municipal policy or custom, plaintiff submits the opinion of retired detective Augustine Papay Jr., her expert on police practices, who concludes, among other things, that "the Chief of the Suffolk County Police Department . . . has allowed a pattern or practice of failing to properly train and supervise its police officers and supervisors [such that they] routinely employ excessive force and . . . commit serious misconduct against civilians with impunity." Pl.'s Ex. A, at 51, ECF No. 154-2. But Papay fails to provide the factual basis for this legal conclusion, and I see no reason to substitute his unsubstantiated

---

[5] The court takes judicial notice of the settlement agreement, which is hosted on the Department of Justice's website. *See, e.g.*, *Millennium Labs., Inc. v. Allied World Assurance Co. (U.S.)*, 165 F. Supp. 3d 931, 933 n.2 (S.D. Cal. 2016), *aff'd*, 726 F. App'x 571 (9th Cir. 2018).

[6] It is true that the complaint in one place alleges that Willie Jackson was "a citizen of Latino heritage" (Am. Compl. ¶ 98), but from my review of the record, this appears to have been a drafting error. *See also id.* ¶ 80 (describing Jackson as "a citizen of African Americano heritage").

conclusions for my own analysis of the record. *See Noveck v. PV Holdings Corp.*, 742 F. Supp. 2d 284, 302 (E.D.N.Y. 2010) ("[W]here an expert's affidavit is vague, conclusory and factually unsupported, it fails to raise an issue of fact." (citation omitted)), *aff'd sub nom. Noveck v. Avis Rent A Car Sys., LLC*, 446 F. App'x 370 (2d Cir. 2011); *cf. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (observing that nonmovant's role on summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

Finally, plaintiff argues that the County is liable for Jackson's death because it failed to train its officers in how to properly handle "emotionally disturbed persons" and how to safely restrain arrestees. *See* Pl.'s Opp'n 45–48. This argument lacks any support in the record. "[A]t the summary judgment stage, plaintiff[] must 'identify a specific deficiency in the [County]'s training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)). Here, plaintiff has provided no evidence of the training that Suffolk County police officers do or do not receive, instead pointing to her allegations that the individual police-officer defendants acted improperly in this case. *See* Pl.'s Opp'n 45–46. "*City of Canton* unequivocally requires, however, that the factfinder's inferences of inadequate training and causation be based on more than the mere fact that the misconduct occurred in the first place." *Amnesty Am.*, 361 F.3d at 130. Because "plaintiff[] ha[s] provided no evidence tending to rule out" the possibility that Jackson's death was caused by "the negligent administration of a valid program, or one or more officers' negligent or intentional disregard of their training, . . . no reasonable factfinder could conclude that . . . excessive force occurred as a result of training deficiencies." *Id.* The County is thus entitled to summary judgment on plaintiff's §§ 1983 and 1985 claims.

**D. Conspiracy to Violate Civil Rights**

In her fourth cause of action, plaintiff alleges that the individual defendants violated § 1985 by conspiring "to unlawfully stop, falsely detain, unlawfully accuse, wrongfully arrest, falsely imprison, and unjustifiably beat, brutalize and cause the death of the . . . decedent because of or on account of [his] race and/or color." Am. Compl. ¶ 70. This claim fails for much the same reason as did plaintiff's claims of municipal liability.

"Conspiracy is an essential element of a claim under 42 U.S.C. § 1985." *Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) (citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)), *aff'd sub nom. Friends of Falun Gong v. Pac. Culture*, 109 F. App'x 442 (2d Cir. 2004). Such "conspiracy claims . . . must contain factual allegations. Conclusory or vague allegations of conspiracy are insufficient to survive a motion for summary judgment." *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 515 (E.D.N.Y. 2010).

Defendants accurately observe that "Plaintiff offers no evidence that tends to establish" either that "Dormer personally conspired with the arresting officers" (Defs.' Br. 9, ECF No. 141-23) or the existence of "a conspiracy between Defendants Spota, Biancavilla and the officers" (*id.* at 22). Indeed, plaintiff fails to offer specific factual allegations of any improper activity by Dormer, Spota, or Biancavilla. I therefore grant them summary judgment on plaintiff's conspiracy claim.

Plaintiff also claims that various defendants violated 42 U.S.C. § 1986 by neglecting to prevent this alleged conspiracy. Section 1986 prohibits failing to act against a § 1985 conspiracy when one has "knowledge" of the conspiracy and "power to prevent" it. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (citation omitted). Consequently, "a § 1986 claim must be predicated upon a valid § 1985 claim." *Id.* Plaintiff has failed to point to any evidence that she has a valid § 1985 claim, and indeed nothing in the record suggests that any of the moving defendants knew about any conspiracy that might have been entered

into by the officers on the scene when Willie Jackson was fatally wounded. I therefore grant the moving defendants summary judgment on this claim as well.

## E. Failure to Investigate

Plaintiff's sixth cause of action appears to be premised on the allegation that defendants intentionally undermined the investigations into Jackson's death and protected the responsible officers from any repercussions. *See, e.g.*, Am. Compl. ¶ 86 (alleging that Biancavilla and Spota "deliberately and intentionally stalled or otherwise delayed the grand jury presentation in effort to undermine and delay any formal review of the incident"); *id.* ¶ 87 (alleging that Biancavilla and Spota presented case to grand jury only after officers had been publicly exonerated); *id.* ¶ 92 (alleging that Dormer "improperly exonerated Defendant Officers" without "a full and fair investigation by the appropriate agencies").[7] Defendants argue that "failing to investigate" a constitutional violation is not itself an independent constitutional violation that gives rise to liability. Defs.' Br. 9–10 (citing *Breitbard v. Mitchell*, 390 F. Supp. 2d 237, 250 (E.D.N.Y. 2005)).

Plaintiff appears to concede the point. *See* Pl.'s Opp'n 27 ("Defendants seek to confuse the court by characterizing 'failure to investigate' as a stand alone constitutional right."). Instead, plaintiff seems to argue that these allegations against Dormer, Spota, and Biancavilla form part of her claim for municipal liability, as they show the defendants' indifference toward or encouragement of "an ongoing policy, pattern, and practice of discriminatory policing." *Id.*; *see also id.* at 32 (attempting to distinguish *Breitbard* in that plaintiff there "failed to establish or plead municipal liability"). For reasons already explained, plaintiff's claim for municipal liability fails. *See supra* Section I.C. As such, I grant summary judgment to the moving defendants on plaintiff's sixth cause of action as well.

---

[7] These allegations are unsupported by the evidence in the record.

13

**F.     State-Law Claims**

The foregoing resolves all the federal claims against the moving defendants. Plaintiff is also suing Dormer and the County under state law, however. *See* Am. Compl. ¶¶ 108, 112.[8] Defendants' only argument with respect to these state-law claims is to observe that "[a] district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it had original jurisdiction." Defs.' Br. 28.

Here, however, federal claims—*i.e.*, claims over which I have original jurisdiction—remain against the six nonmoving defendants. *See* Am. Compl. ¶¶ 50, 55, 70, 80, 85. And plaintiff's state-law claims of negligence and wrongful death, which are pleaded against Dormer and the County as well as against the nonmoving defendants, arise out of the same nucleus of facts. *See id.* ¶¶ 108, 112. Consequently, "[t]he fact that all federal claims against [the moving defendants] are being dismissed is insufficient to permit the Court to decline to exercise supplemental jurisdiction . . . inasmuch as other federal claims remain in the case and the state law claims 'form part of the same case or controversy.'" *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 434 (S.D.N.Y. 2012) (citation omitted); *see* 28 U.S.C. § 1367(a). Summary judgment is thus denied on the state-law claims.

## II.     The Motion to Seal

In connection with their motion for partial summary judgment, defendants sought leave to file two exhibits under seal: the Suffolk County Medical Examiner's report of Willie Jackson's autopsy and the Suffolk County Police Department's report of its IAB investigation into Willie Jackson's death. *See* Mot. to Seal ¶ 2. Shanta Jackson opposes the continued sealing of these records and has waived any privacy interests that her father's estate may have in these documents. *See* S. Jackson Aff. ¶¶ 2–3, ECF No. 151-17. In light of this waiver, defendants

---

[8] Plaintiff does not plead any state-law claims against Spota or Biancavilla.

acquiesce to the unsealing of the autopsy report, but they maintain that the IAB report should remain sealed. *See* Defs.' Sealing Reply 2, ECF No. 144.

"[I]t is well-settled that 'documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Brown v. Maxwell*, No. 18-2868, 2019 WL 2814839, at *3 (2d Cir. July 3, 2019) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006)). As a result, the sealing of such documents can "be justified only [if] . . . necessary to preserve higher values," such as "the danger of impairing law enforcement or judicial efficiency." *Id.* at *3 & n.13 (first quoting *Lugosch*, 435 F.3d at 124; then quoting *SEC v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001)). And even when sealing is appropriate, any "sealing order [must be] narrowly tailored." *Id.* at *3 (quoting *Lugosch*, 435 F.3d at 124).

Here, defendants argue that the IAB report is both "currently subject to a confidentiality order" and "maintained as a confidential report by the Suffolk County Police Department, pursuant to internal policy and state law." Mot. to Seal ¶¶ 2–4 (citing N.Y. Civ. Rights Law § 50-a). First, "[h]owever, that a document was produced in discovery pursuant to a protective order has no bearing on the presumption of access that attaches when it becomes a judicial document." *Collado v. City of New York*, 193 F. Supp. 3d 286, 289–90 (S.D.N.Y. 2016). Second, "state law does not govern discoverability and confidentiality in federal civil rights actions." *Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 530–31 (E.D.N.Y.) (quoting *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. County of Nassau*, 730 F.3d 156 (2d Cir. 2013). The arguments offered by defendants are therefore meritless.

As plaintiff accurately observes, defendants do not argue "that an investigation would be impeded, [that] police strategy would be exposed, or that anyone would be endanger[ed] [by] the unsealing" of the report. Smith Aff. ¶ 10, ECF No. 151-17. Nor do defendants offer any other reason for sealing—save that the report "contain[s] sensitive, personal information about parties and nonparties." Mot. to Seal ¶ 4. That, however, can be remedied with specific redactions. *See, e.g., Brown*, 2019 WL 2814839, at *4 n.22 (implementing "minimal redactions [to summary judgment record] to protect personally identifying information such as personal phone numbers, contact lists, birth dates, and social security numbers"). In light of the presumption of public access, I see no reason to keep the entire IAB report under seal. Defendants' motion is denied.

### III. The Motion for Reconsideration

On July 15, 2014, Judge Bianco denied plaintiff's motion for spoliation sanctions based on the County's returning to Breuer and Cipriano their batons and flashlights, at least one of which, plaintiff alleges, was used to kill Willie Jackson. *Estate of Jackson*, 2014 WL 3513403, at *1, *8. Although plaintiff was "offered access to the items" themselves—and declined to inspect them—plaintiff argued that sanctions were in order because "any potential fragments of tissue, hair, DNA, or of any similar substances were lost from the flashlights and batons forever." *Id.* at *4.

> To succeed on a spoliation motion, the movant must show "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*Id.* (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). Judge Bianco denied plaintiff's motion for failing each of these three requirements. First, he concluded that "plaintiff simply has no evidence" that there *was* any forensic evidence to be

16

spoliated in the first place. *Id.* Second, Judge Bianco found that "there is nothing in the record to suggest that [Detective Bottari] was operating in bad faith, or that he was grossly negligent," when he returned the batons and flashlights to the officers. *Id.* at *6. And third, Judge Bianco ruled that plaintiff's contention that any missing evidence would have supported her claims was "based solely on conjecture." *Id.* at *7.[9] Consequently, he decided that no sanction was warranted, but he noted that "plaintiff can still argue to the jury" that it should draw an adverse inference based on defendants' conduct. *Id.* at *8.

In ruling that plaintiff failed to establish the existence of spoliated evidence, Judge Bianco noted that, "beyond Ms. Jackson's testimony about a 'stick' . . . , plaintiff has presented no evidence . . . disputing DeJoseph's findings . . . that decedent died because he was pushed backward and fell, with no findings of any injuries consistent with strikes from a baton, flashlight, or stick." *Id.* at *5. But in support of her motion for reconsideration, plaintiff has since submitted an expert report from William L. Manion—then the Chief of Pathology at the Memorial Hospital of Salem County, N.J.—that concludes that Willie Jackson was "repeatedly struck about the head" after he fell backward. Pl.'s Ex. B, at 3, ECF No. 147-8. She has thus presented additional evidence that there may have been forensic evidence on the officers' batons or flashlights.[10]

"[T]he law of the case doctrine . . . encompasses situations in which one judge has rendered an order or judgment and the case is then transferred to another judge." *United States*

---

[9] In this connection, Judge Bianco alluded to defendants' argument that "even if Mr. Jackson's biological materials were on the batons or flashlights, the probative value of such evidence . . . [would be] limited given the undisputed fact that the officers were in close proximity to Mr. Jackson (who was bleeding), and had contact with him in the street and ambulance." *Estate of Jackson*, 2014 WL 3513403, at *7.

[10] I note, however, that despite Judge Bianco's observation that "an expert could inspect the [flashlights and batons] and the Autopsy Report and conclude that decedent's injuries are consistent with his body being struck by these objects" (*Estate of Jackson*, 2014 WL 3513403, at *7 n.6), Manion's report does not indicate that he examined the flashlights or batons in arriving at his conclusions (*see* Pl.'s Ex. B, at 1).

17

*v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997); *see, e.g.*, *Betances v. Fischer*, No. 11-CV-3200 (RWL), 2019 WL 1213146, at *10 n.11, *16–17, *20 (S.D.N.Y. Feb. 21, 2019). "Under the law of the case doctrine and general principles of comity, a successor judge has the same discretion to reconsider an order as would the first judge, but should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently." *O'Keefe*, 128 F.3d at 891; *see also Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) ("Under the 'law of the case' doctrine, 'courts are understandably reluctant to reopen a ruling once made,' especially 'when one judge or court is asked to consider the ruling of a different judge or court.'").

Plaintiff's additional evidence tends to undermine Judge Bianco's first basis for denying her motion—*i.e.*, that she had failed to demonstrate that there was any forensic evidence on the batons or flashlights in the first place. But Judge Bianco explicitly stated in his opinion that "even assuming *arguendo* that the transfer of the items impeded the ability to recover forensic evidence and that such action constituted spoliation, . . . no sanction is warranted based on plaintiff's inability to satisfy the other prongs of the spoliation test." *Estate of Jackson*, 2014 WL 3513403, at *5. Plaintiff's motion for reconsideration provides no basis for me to reconsider Judge Bianco's ruling with respect to either of those other two prongs. Because those prongs are dispositive, plaintiff's motion for reconsideration is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is granted in part and denied in part, defendants' motion to seal is denied, and plaintiff's motion for reconsideration is denied. Specifically:

a. Summary judgment is granted to defendants Spota and Biancavilla with respect to all claims against them and to defendants Suffolk County and Dormer with respect to the federal

18

claims against them. Summary judgment is denied with respect to the state-law claims against the County and Dormer. Additionally, plaintiff's seventh cause of action is dismissed in its entirety, and defendants Suffolk County Police Department and Suffolk County District Attorney's Office are dismissed from this lawsuit.

      b. The motion to seal is denied. Defendants are directed to file, on the public docket, within seven days of the date of this order, a copy of the autopsy report and a copy of the IAB report in which all dates of birth, personal phone numbers, and home addresses are redacted.

      c. The motion for reconsideration is denied.

      So ordered.

\_\_\_\_/s/_____
Allyne R. Ross
United States District Judge

Dated:      July 19, 2019
               Brooklyn, New York